JUDGE CASTEL

08 CV 6745

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ICAP HYDE & COMPANY LIMITED,

                Plaintiff,

- against -

NEPTUNE SHIPPING S.A.,

                Defendant.
------------------------------------------------------------X

ECF CASE

RECEIVED JUL 29 2008 U.S.D.C. S.D.N.Y. CASHIERS

## VERIFIED COMPLAINT

Plaintiff, ICAP HYDE & COMPANY LIMITED, (hereinafter referred to as "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, NEPTUNE SHIPPING S.A. (hereinafter referred to as "Defendant"), alleges, upon information and belief, as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States Code § 1331.

2. At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law and was at all material times the named broker in the Charter Party contract for the motor vessel "I. DUCKLING" (hereinafter the "Vessel").

3. Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law, and was at all material times the owner of the Vessel.

4. By a Charter Party made on or about June 27, 2007, Defendant chartered the Vessel to nonparty Ocean Bulk Carriers Limited ("Charterers"), pursuant to which commission was payable to Plaintiff "by the Vessel and Owners." *See copy of Charter Party (without additional clauses) annexed hereto as Exhibit "1".*

5. Plaintiff fully performed all of its duties and obligations under the Charter Party.

6. A dispute arose between the parties regarding Defendant's failure to pay commission due and owing to Plaintiff as the named broker under the Charter Party contract.

7. As a result of Defendant's breach of the Charter Party due to its failure to pay commission, Plaintiff has sustained damages in the total principal amount of $78,858.80, exclusive of interest, arbitration costs and attorneys fees.

8. Despite due and repeated demand, Defendant has failed to pay the amounts due and owing under the Charter Party.

9. Pursuant to the Charter Party, disputes between the parties are to be submitted to arbitration in London subject to English law. Plaintiff has commenced arbitration of its claim against Defendant.

10. This action is brought in order to obtain jurisdiction over Defendant and also to obtain security for Plaintiff's claims and in aid of such arbitration proceedings.

11. Interest, costs and attorneys' fees are routinely awarded to the prevailing party in such proceedings. As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

|  |  |  |
|---|---|---|
| A. | Principal claim – Commission: | $78,858.80 |
| B. | Estimated interest on claim – 3 years at 7.5% compounded quarterly: | $12,616.26 |
| C. | Estimated arbitration costs: | $12,000.00 |
| D. | Estimated attorneys' fees and expenses: | $15,000.00 |
| **Total:** |  | **$118,475.06** |

12. The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant. *See Affidavit in Support of Prayer for Maritime Attachment annexed hereto as Exhibit 2.*

13. The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant and to secure the Plaintiff's claim as described above.

**WHEREFORE,** Plaintiff prays:

A. That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint failing which default judgment be entered against it;

B.  That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$118,475.06** belonging to, due or being transferred to, from, or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.  That pursuant to 9 U.S.C. §§ 201 et. seq. and/or the principles of comity, this Court recognize and confirm any judgment rendered on the claims had herein as a Judgment of this Court;

D.  In the alternative, that the Court retain jurisdiction to compel the Defendant(s) to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

E.  That this Court recognize and confirm any award or judgment rendered on the claims had herein as a Judgment of this Court;

F.  That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

G.  That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

H.  That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: New York, NY
July 29, 2008

The Plaintiff,
ICAP HYDE & COMPANY LIMITED

By: _____
Patrick F. Lennon
Coleen A. McEvoy
LENNON, MURPHY & LENNON, LLC
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 - facsimile
pfl@lenmur.com
cam@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York    )
                     )    ss.:    City of New York
County of New York   )

1. My name is Coleen A. McEvoy.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney in the firm of Lennon, Murphy & Lennon, LLC attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    New York, NY
          July 29, 2008

_____
Coleen A. McEvoy

# EXHIBIT 1

3. ~~That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than ............ tons and not more than ............ tons and to be re-delivered with not less than ............ tons and not more than ............ tons.~~ *See Clause 35.*

4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of ............ *as per Clause 75* ~~United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and stores, on ............ summer freeboard, per Calendar Month,~~ commencing on and from the day of her delivery, as aforesaid, and at and after the same rate for any part of a *day* month; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary wear and tear excepted, to the Owner (unless lost) at *on dropping last outward sea pilot one safe port Aden/Japan Range, Skaw/Cannakale including full Mediterranean, Boston/Bahia Blanca including US Gulf plus Carribean, Vancouver/West Coast of Mexico any time day or night, Sundays and holidays included* unless otherwise mutually agreed. Charterers are to give Owners not less than *25/15/10/7 days approximate notice and 5/3/2/1 days definite* notice of vessels expected date of re-delivery, and probable port. *See also Clause 75.*

5. Payment of said hire to be made ~~in New York~~ *to the bank account designated by Owners* in cash in United States Currency, *15 days* ~~semi-monthly~~ in advance, and for the last *15 days* ~~half-month or~~ part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Charterers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers *provided that Owners have first given a grace period of maximum 2 working days in order to rectify the above failure to make punctual and regular payment.* ~~Time to count from 7 a.m. on the working day following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m. but if required by Charterers, they to have the privilege of using vessel at once, such time used to count as hire.~~

Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application of such advances.

6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place *or anchorage in port or elsewhere* that Charterers or their Agents may direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely lie aground *but NAABSA area in Argentina (including River Plate), Brazil, Buenaventura and Sauda, Norway only.*

7. That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew, tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow, Charterers paying Owners ............ per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are incurred in the consequences of the carriage of passengers, Charterers are to bear such risk and expense.~~ *No passengers allowed.*

8. That the Captain shall prosecute his voyages with the *due* utmost despatch, and shall render all customary assistance with ship's crew and boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, and trim, *and discharge* the cargo at their expense under the supervision of the Captain, who is to sign *or when required by Charterers or their agents to sign on his behalf* Bills of Lading for cargo as presented, in conformity with Mate's ~~or Tally Clerk's~~ receipts, *but Charterers agree to remain responsible for any consequences should these not conform with Mate's receipt.*

9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the rate of $10.00 per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally Clerks, Stevedore's Foreman, etc., Charterers *to compensate Owners lumpsum US$1,400.00 per month or pro rata in respect of Charterers' victualling, communication and representation.* ~~paying at the current rate per meal, for all such victualling.~~

11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Charterers, their Agents or Supercargo, when required, with a true copy of daily *deck and engine* Logs, showing the course of the vessel and distance run and the consumption of fuel *as well as revolutions of main engine and velocity of and direction of wind and sea, all in English language and Master to provide Charterers with daily noon reports.*

12. That the Captain shall use diligence in caring for *the cargo and for* the ventilation of the cargo.

13. ~~That the Charterers shall have the option of continuing this charter for a further period of ............ on giving written notice thereof to the Owners or their Agents ............ days previous to the expiration of the first named term, or any declared option.~~

14. That if required by Charterers, time not to commence before *12th July, 2007* ............ and should vessel not have given written notice of readiness on or before *20th July, 2007* ............ ~~but not later than 4 p.m.~~ Charterers or their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.

15. That in the event of the loss of time from deficiency *and/or default and/or strike of crew* or deficiency of ~~men or~~ stores, fire, breakdown or damages to hull, machinery or equipment, grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost *and all extra directly related expenses may be deducted from the hire,* and if upon the voyage the speed be reduced by defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence thereof, and all extra expenses shall be deducted from the hire.





1st ORIGINAL

# Time Charter

GOVERNMENT FORM
*Approved by the New York Produce Exchange*
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1  **This Charter Party**, made and concluded in LONDON, 27th day of June, 2007
2  Between *NEPTUNE SHIPPING SA, ATHENS*
3  time charter Owners of the good *Panamanian flag* Steamship/Motorship *"I. DUCKLING"* - See Clause 44 for vessel's Description
4  of tons gross register, and tons net register, having engines of indicated horse power
5  and with full machinery and equipment in a thoroughly efficient state, and about
6  cubic feet bale capacity, and about tons of 2240 lbs.
7  deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one-half percent of ship's deadweight capacity,
8  allowing a minimum of fifty tons) on a draft of feet inches on Summer freeboard, inclusive of permanent bunkers,
9  which are of the capacity of about tons of fuel, and capable of steaming, fully laden, under good weather
10 conditions about knots on a consumption of about tons of best Welsh coal - best grade fuel oil - best grade Diesel oil,
11 now *trading*
12 and *OCEAN BULK CARRIERS LIMITED* Charterers of the City of *LONDON*
13 **Witnesseth**, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
14 *about 5 months to about 5 months period (about meaning plus/minus 15 days more or less in Charterers option) via safe port(s), .*
15 *safe berth(s), safe anchorage(s), always afloat, always accessible, always within Institute Warranty Limits with NAABSA as per*
16 *NYPE Clause 6 also as per Clause 75* within below mentioned trading limits.
    Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17 the fulfillment of this Charter Party. *Acceptance of delivery by Charterers shall not constitute any waiver of Owners' obligations hereunder.*
18 Vessel to be placed at the disposal of the Charterers, at *passing Muscat outbound, any time day or night, Sundays and*
19 *holidays included*
20 in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as
21 the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 5. Vessel on her *arrival first and*
    *subsequent load port(s)* delivery to be
22 ready to receive *any permissible cargo to Charterers'/Independent Surveyors' satisfaction. Should the vessel fail to pass such survey*
    *then the vessel to be off hire from time of failure until vessel is fully accepted (see also Clause 74). On delivery and throughout*
    *the charter vessel to be* with clean-swept holds and light, staunch, strong and in every way fitted for the service, having water ballast, *cranes* winches and
23 donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the *cranes* winches at one and the same
24 time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-
25 dise, including petroleum or its products, in proper containers, excluding *See Clause 37*
26 (vessel is not to be employed in the carriage of Live Stock), but Charterers are to have the privilege of shipping a small number on deck at their risk,
27 all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports *and/or safe places* in
28 British North America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or
29 Mexico, and/or South America - *Trading Exclusions - see also Clause 67* and/or Europe
30 and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between
31 October 31st and May 15th, Hudson Bay and all unsafe ports, also excluding when out of season, White Sea, Black Sea and the Baltic.
32 *Charterers have the option to breach Institute Warranty Limits against paying additional premium on hull and machinery*
33 *according to voucher from Owners' Hull Underwriters showing additional premium. Amount not to exceed the premium*
34 *calculated on the basis of an advisory rate quoted by the Chairman of Breach of Warranty Committee on the London market*
35 as the Charterers or their Agents shall direct, on the following conditions:
36  1. That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees of the Crew *and watchmen other*
    *than compulsory* ; shall pay for the
37 insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep
38 the vessel in a thoroughly efficient state in hull, *cargo spaces*, machinery and equipment for and during the service.
39  2. That *whilst on hire* the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, Pilotages, Agencies, Commissions,
40 Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated, but when the vessel puts into
41 a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
42 illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this
43 charter to be for Charterers account. All other fumigations to be for Charterers account: after vessel has been on charter for a continuous period
44 of six months or more.
45  Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but
46 Owners to allow them the use of any dunnage and shifting boards *and any other fittings* already aboard vessel, Charterers to have the privilege of using
    shifting boards
47 for dunnage, they making good any damage thereto.

16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas, Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the purpose of saving life and property.

17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at *London* ~~New York~~, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men. *See further Arbitration Clause 30.*

18. That the Owners shall have a lien upon all cargoes, and all sub-freights *and sub-hires* for any amounts due under this Charter, including General Average contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners in the vessel.

19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and Crew's proportion. General Average shall be adjusted *in London*, stated and settled, according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of York-Antwerp Rules *1974 as amended 1994 or any amendments thereto.* ~~1974, at such port or place in the United States as may be selected by the carrier, and as to matters not provided for by these Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in United States money.~~ *Charter hire not to contribute to General Average.*

~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or ships belonged to strangers.~~

Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

20. Fuel used by the vessel while off hire, also ~~for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and the~~ cost of replacing same, to be allowed by Owners.

21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~ *Dry-docking during the currency of this Charter in case of emergency and to maintain class status.*

22. Owners shall maintain the gear of the ship as fitted, providing gear (for all *cranes* ~~derricks~~) capable of handling lifts up to *their maximum capacity in accordance with the Description Clause* ~~three tons,~~ also ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for same, otherwise equipment and gear for heavier lifts shall be for Charterers' account.~~ Owners also to provide on the vessel *power and electric light on deck and in cargo holds sufficient for night work in all holds simultaneously* ~~tackles and oil for night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense. The~~ Charterers to have the use of any gear on board the vessel.

23. Vessel to work night and day, if required by Charterers, and all *cranes* ~~winches~~ to be at Charterers' disposal during loading and discharging; ~~steamer to provide one winchman per hatch to work winches day and night, as required. Charterers agreeing to pay officers, engineers, winchmen, deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the port, or labor unions, prevent crew from driving winches,~~ shore *cranemen* ~~Winchmen~~ to be paid by Charterers. In the event of a disabled *crane or cranes* ~~winch or winches,~~ or insufficient power to operate *crane or cranes* ~~winches,~~ Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time *and extra expenses directly related, including standby expenses,* occasioned thereby *except such a breakdown caused by Charterers, their agent, servant and any person acting on behalf of Charterers*.

24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled 'An Act relating to Navigation of Vessels, etc.,' in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to *attached Protective Clauses,* ~~the following clauses, both of which are to be included in all bills of lading issued hereunder.~~

~~U. S. A. Clause Paramount
This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~

~~Both-to-Blame Collision Clause
If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owner of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-~~



165 ~~carrying ship or her owner to the owners of said goods and set off recouped or recovered by the other or non carrying ship or her~~
166 ~~owners as part of their claim against the carrying ship or carrier.~~
167 25. The vessel shall not be required to enter any ice-bound port, or any port where
168 drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel
169 port or to get out after having completed loading or discharging. *Notwithstanding contents of Clause 25 Master to respect and abide by*
*contents of approved Ice Clauses such as Gencon and Nordice when contained in Sub-brokers*
170 26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171 navigation of the vessel, *acts of pilots and tugboats,* insurance, crew, and all other matters, same as when trading for their own account.
172 27. A commission of 1.25 ~~2 1/2~~ per cent is payable by the Vessel and Owners to *Icap Hyde & Co. Ltd., London*
173 ──────────────────────────────────────────────────────────
174 on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
175 28. An address commission of 3.75 ~~2 1/2~~ per cent payable to *Charterers* ............................ on the hire earned and paid under this Charter.

*Clauses 29 through 87 are fully incorporated in this Charter Party.*

**THE OWNERS :**                                    **THE CHARTERERS :**

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship Brokers & Agents (U.S.A.), Inc. using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.



# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ICAP HYDE & COMPANY LIMITED.,           :
                                        :     08 CV _____
                    Plaintiff,          :
                                        :     ECF CASE
   - against -                          :
                                        :
NEPTUNE SHIPPING S.A.,                  :
                                        :
                    Defendant.          :
----------------------------------------------------------------X

### AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  )
                      )  ss: SOUTHPORT
County of Fairfield   )

Coleen A. McEvoy, being duly sworn, deposes and says:

1. I am a member of the Bar of this Court and represent the Plaintiff herein. I am familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANT IS NOT PRESENT IN THE DISTRICT

2. I have attempted to locate the Defendant, NEPTUNE SHIPPING S.A., within this District. As part of my investigation to locate the Defendant within this District, I checked the telephone company information directory, as well as the white and yellow pages for New York listed on the Internet or World Wide Web, and did not find any listing for the Defendant. Finally, I checked the New York State Department of Corporations' online database which showed no listings or registration for the Defendant.

3. I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4. Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

5. This is Plaintiff's first request for this relief made to any Court.

PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

6. Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R. Peterson, Coleen A. McEvoy, Anne C. LeVasseur or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendant.

7. Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

8.  To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

9.  Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

10.  Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served and throughout the next day, provided that process is served the next day, and to authorize service of process via facsimile or e-mail following initial in personam service.

Dated:   July 29, 2008
         Southport, CT

_____
Coleen A. McEvoy

Sworn and subscribed to before me
this 29th day of July, 2008.

_____
NOTARY PUBLIC

-4-